96 F.3d 1448
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 LOCAL 1985, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,
Plaintiff-Appellee,
v.
The HOOVER COMPANY, Defendant-Appellant.
 
 Nos. 95-3475, 95-3517.
 United States Court of Appeals, Sixth Circuit.
 Sept. 5, 1996.
 On Appeal from the United States District Court for the Northern District of Ohio, No. 93-02235; Kathleen M. O'Malley, Judge; No. 91-01296; Solomon Oliver, Jr., Judge.
 N.D.Ohio
 REVERSED.
 Before: RYAN and NORRIS, Circuit Judges; JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 In this consolidated appeal, the International Brotherhood of Electrical Workers, Local 185 ("the Union") filed suit against the Hoover Company on behalf of two of its members, Judith King and Sandra Croston, who were terminated from their positions with the company for failing to report to work as required. Both women had been receiving temporary workers' compensation benefits; in each case, a dispute arose concerning whether they continued to qualify for such benefits. Although Hoover prevailed in arbitration proceedings, separate district court judges vacated the arbitration awards as violative of the public policy of Ohio's workers' compensation laws. After careful review, we reverse the judgments entered below.
 
 Judith King's Case
 
 2
 In its Memorandum and Order filed on April 20, 1995, the district court gave a full recital of the facts of Ms. King's case, which neither party disputes, and we will not repeat them here.
 
 
 3
 It is well-settled that courts play a limited role when asked to review the decision of an arbitrator. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36-37 (1987). This is so because "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 596 (1960). Thus, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 484 U.S. at 38; accord Shelby County Health Care Corp. v. American Fed'n of State, County and Municipal Employees, Local 1733, 967 F.2d 1091, 1094 (6th Cir.1992).
 
 
 4
 However, a narrowly construed public policy exception to this deferential standard of review exists:
 
 
 5
 A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. That doctrine derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act, and is further justified by the observation that the public's interests in confining the scope of private agreements to which it is not a party will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements.
 
 
 6
 Misco, 484 U.S. at 42 (citations omitted). Invocation of this public policy exception is appropriate only when the policy is definite, well-defined, and grounded upon laws and legal precedents rather than on general considerations of the public interest. W.R. Grace and Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum and Plastic Workers of America, 461 U.S. 757, 766 (1983). Accordingly, instances where an arbitrator's award has been vacated for public policy reasons are rare. Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l, 861 F.2d 665, 670 (11th Cir.1988), cert. denied, 493 U.S. 871 (1989).
 
 
 7
 In reversing the arbitrator's decision, the district court reasoned that it violated the Ohio public policy expressed by Ohio Rev.Code Ann. § 4123.56(A), which reads in part:
 
 
 8
 In the case of a self-insuring employer [such as Hoover], payments shall be for a duration based upon the medical reports of the attending physician. If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer pursuant to division (C) of section 4123.511 of the Revised Code. Payments shall continue pending the determination of the matter, however payment shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to his former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.
 
 
 9
 Under circumstances similar to those now before us, at least one Ohio court has construed this statute to mean that "[p]ublic policy would require a reversal of a decision which would allow an employer to force a worker to choose between going back to work or being terminated without the employer's first complying with R.C. 4123.56 when the dispute is over the employee's ability to return to work." Oil Chem. and Atomic Workers Int'l Union, AFL-CIO v. RMI Co., 41 Ohio App.3d 16, 20 (1987), juris. mot. overruled, 64 Ohio St.3d 1429, and cert. denied, 506 U.S. 1001 (1992). The district court concluded, " RMI is controlling law in Ohio, and as such is a clear statement of Ohio's public policy. In this case, Hoover, without complying with O.R.C. § 4123.56, forced King, who was receiving workers' compensation benefits, to choose between going back to work or being terminated." Mem.Op. at 11.
 
 
 10
 Our disagreement is not with the district court's legal analysis but with its framing of the facts. Simply put, King was not forced to choose between going back to work or being terminated; rather, she was asked to submit to a medical examination so that her ability to return to work could be reassessed. The reasonableness of this request is made amply apparent by the statement of her own treating physician that "there is absolutely no rationale for her to have been on temporary total disability for so long" and "she has reached maximal medical improvement." While this statement might have served as a basis under Ohio Rev.Code § 4123.651(C) for Hoover to suspend King's temporary total disability benefits in the interim, it does not follow that the statute provides Hoover its exclusive remedy, with the result that the company was forbidden from terminating her for insubordination for refusing to be examined by a physician of the company's choice. The statutes at issue protect employees from adverse employment actions taken contrary to the advice of one's treating physician. However, King was not ordered back to work contrary to such a medical opinion, and therefore the public policy concerns relied upon by the district court have no application under these circumstances.
 
 Sandra Croston's Case
 
 11
 As with Ms. King's case, the facts underlying Ms. Croston's claims were fully set out in the magistrate judge's report and recommendation rendered March 14, 1994, which was fully adopted by the district court in its judgment entry for plaintiff. Likewise the legal analysis governing the resolution of the appeal mirrors that set forth above. Accordingly, we limit our discussion to those points unique to Ms. Croston's circumstances.
 
 
 12
 During oral argument, counsel for Ms. Croston conceded that both her own treating chiropractor, Dr. Sprandel, and Hoover's examining physician agreed that she was fit to return to work. In a C-84 form completed for the Ohio Bureau of Workers' Compensation on March 6, 1990, Dr. Sprandel indicated that Ms. Croston could return to work with certain restrictions on March 26, the same date later specified by Hoover's examining physician. Although Dr. Sprandel revised that date to April 16 in order to afford another examining physician time to see the patient, he submitted a corrected C-84 on March 22 in which he indicated for a second time that Ms. Croston could return with restrictions on March 26.[1] Thus, on March 22, when Ms. Croston received notice from Hoover that her medical leave had been rescinded and that she was to report to work on March 26, both examining physicians agreed that she was physically capable of returning to work, albeit with restrictions.
 
 
 13
 Given this backdrop, we conclude that the public policy concerns expressed in the RMI opinion are inapplicable; the record fails to support a conclusion that a dispute existed concerning Ms. Croston's "ability to return to work." As both W.R. Grace and Misco make clear, the public policy exception to the general rule that an arbitration award shall not be disturbed applies in those rare instances where a clearly defined law or legal precedent has been thwarted. This is not such a case. Even when we construe the record in a light most favorable to Ms. Croston, all that can be said is that there was a dispute of less than three weeks over when she must return to work, not whether she could return to work. In our view, these circumstances do not warrant disturbing the arbitrator's decision.
 
 
 14
 For the foregoing reasons, the judgment of the district court in each case is reversed and the cause is remanded with instructions to enter judgment in favor of defendant.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 We note that Dr. Sprandel listed this as an "estimated date," rather than an "actual date."