COOLIDGE, APPELLANT, *v.* RIVERDALE LOCAL SCHOOL DISTRICT, APPELLEE.

[Cite as *Coolidge v. Riverdale Local School Dist.,*
100 Ohio St.3d 141, 2003-Ohio-5357.]

(No. 2002–1407—Submitted May 14, 2003—Decided October 22, 2003.)

ALICE ROBIE RESNICK, J.

{¶ 1} This appeal stems from the absenteeism-based discharge of a public school teacher who was receiving ongoing temporary total disability ("TTD") compensation under the Workers' Compensation Act.

{¶ 2} On October 22, 1998, plaintiff-appellant, Cheryl M. Coolidge, a continuing-contract teacher employed by defendant-appellee, Riverdale Local School District, was assaulted and seriously injured by one of her students at the Riverdale Elementary School in Mount Blanchard, Ohio. She returned to work the next day, which was a Friday, but left early to seek medical attention and then called in sick the following Monday.

{¶ 3} Thereafter, Coolidge remained off work and successively exhausted her available options for leave. Initially, appellee granted Coolidge two 30–day periods of paid assault leave pursuant to the terms of a collective bargaining

agreement between the Riverdale Local School District Board of Education and the Riverdale Education Association but denied Coolidge's request for a further extension. When her assault leave expired on January 15, 1999, Coolidge began to use her accumulated sick leave, which was exhausted on May 11, 1999. Appellee then placed Coolidge on uncompensated leave pursuant to a board policy providing that "uncompensated leave may be granted for a period not to exceed one (1) school year" for purposes of "restoration of health."

{¶ 4} By letter dated March 23, 2000, the superintendent notified Coolidge: "It is my intention to take a recommendation to the Board at its next regular meeting on April 17, 2000, that it consider termination of your teaching contract due to exhaustion of available leave and continuing inability to return to work." On April 17, 2000, the board voted to consider terminating Coolidge's contract "on the grounds that she has exhausted all available leave and continues to be unable to fulfill the requirements of her continuing teacher's contract." Coolidge then made a written demand for hearing pursuant to R.C. 3319.16, which was held before a referee on August 1, 2000.

{¶ 5} The referee essentially concluded that Coolidge had been "absent without leave" since at least May 11, 2000, the day after her uncompensated leave expired, and that Coolidge's "[f]ailure to teach without a legal absence [constitutes] 'other good and just cause' [under R.C. 3319.16] for termination of her contract." In so doing, the referee acknowledged that "Coolidge has been receiving temporary total disability [compensation] from the Ohio Bureau of Workers' Compensation for the period of time beginning with the date of the injury and continuing through the hearing date * * *." However, she rejected Coolidge's argument that an employee may not be discharged for failing to return from a leave of absence while receiving TTD compensation. Instead, the referee concluded that since the board's policy on uncompensated leave does not specifically exclude absences due to an injury compensable under the Workers' Compensation Act, Coolidge's continued absence beyond the one-year policy limitation is in violation of her teaching contract.

{¶ 6} On September 18, 2000, the board passed the following resolution:

{¶ 7} "NOW THEREFORE, BE IT RESOLVED that the continuing teaching contract of Cheryl Coolidge with the Riverdale Local School District be hereby terminated, effective September 18, 2000, on the following grounds:

{¶ 8} "1. Cheryl Coolidge has exhausted available paid leave, including assault leave and sick leave;

{¶ 9} "2. Cheryl Coolidge has been absent without leave, contrary to the contract she entered into on September 21, 1998;

{¶ 10} "3. Cheryl Coolidge has failed to perform the duties of her contract; and

{¶ 11} "4. As a result of the foregoing, 'other good and just cause' exists for termination of Cheryl Coolidge's teaching contract."

{¶ 12} Coolidge appealed the board's order of termination to the Hancock County Court of Common Pleas. In her complaint, Coolidge alleged that the board's "non-compensated leave policy * * * is not applicable to [her] for the reason that [she] has been receiving Workers' Compensation Disability as a result of an assault by a student during teaching hours." Relying on R.C. 4123.56 and 4123.90, Coolidge argued that "[n]o court should construe Section 3319.16 Ohio Revised Code to allow the employer Riverdale Schools to terminate a continuing teaching contract based solely on absence [resulting] from a work-related injury."

{¶ 13} The trial court framed the issue in terms of whether public policy requires the reversal of a decision that effectively forces the injured employee to choose between workers' compensation and continued employment, but specifically elected "not to address this public policy question." Instead, the court reversed the board's decision on the basis that Coolidge's uncompensated leave had not yet expired when the board initiated termination proceedings and that the board's refusal to extend Coolidge's assault leave beyond 60 days was arbitrary and unreasonable. The trial court did indicate, however, that Coolidge's receipt of ongoing TTD compensation would preclude a finding that she "was away from work without justification" because it "put the Board on notice * * * that she was incapable of working."

{¶ 14} In the court of appeals, it was actually appellee who raised the public policy issue, arguing in part that the Workers' Compensation Act does not prohibit the absenteeism-based discharge of an employee who is receiving TTD compensation, so long as the decision to terminate is based on the employee's inability to work rather than on the fact that the employee filed a workers' compensation claim.

{¶ 15} In a split decision, the court of appeals reversed the judgment of the trial court, but the majority opinion contains no reference to the fact that Coolidge had been receiving TTD compensation. The majority found only that Coolidge's uncompensated leave had already expired by the time the board took formal action to terminate her contract and that there was sufficient evidence to support the board's denial of additional assault leave.

{¶ 16} The dissenting judge "share[d] the trial court's concern that a teacher who has been assaulted and presents enough medical evidence to establish an initial 60 days of assault leave—and who is still receiving worker[s'] compensation benefits for her injuries some two years later—can be unilaterally taken off assault leave by the school board and ultimately terminated without any medical basis in the record to support either of those decisions."

{¶ 17} The cause is now before this court pursuant to the allowance of a discretionary appeal.

{¶ 18} The overriding issue in this case is whether public policy embodied in the Workers' Compensation Act protects an employee who is receiving TTD compensation from being discharged solely because of the disabling effects of the allowed injury, that is, absenteeism and inability to work. The courts below have avoided this question by either deciding the cause on alternate grounds or completely ignoring the fact that Coolidge was discharged while suffering from a compensable disability. However, there is no principle of judicial restraint that requires courts to refrain from deciding public-policy questions.

{¶ 19} A claim of wrongful discharge in violation of public policy, whether based on workers' compensation or other law, originated, and is generally conceived in Ohio and elsewhere, as an exception to the employment-at-will doctrine. See *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 67–68, 652 N.E.2d 653; *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981; *Frampton v. Cent. Indiana Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425; *Petermann v. Internatl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 396* (1959), 174 Cal.App.2d 184, 344 P.2d 25; 82 American Jurisprudence 2d (2003), Wrongful Discharge, Sections 53 and 93; Discharge From Employment in Retaliation for Filing Workers' Compensation Claim (1988), 50 Am.Jur. Proof of Facts 2d 187.

{¶ 20} Coolidge is clearly not an employee at will, since R.C. 3319.16 affords her protection against termination without "good and just cause." But this does not mean that the board can legally terminate Coolidge's teaching contract for reasons that are repugnant to public policy. R.C. 3319.16 does not immunize the board from the dictates of state policy, and it certainly does not provide teachers with less protection against wrongful discharges than the common law generally affords to at-will employees. Thus, if Coolidge can show that her discharge contravened public policy expressed in the Workers' Compensation Act, she will have established that her discharge was without good and just cause under R.C. 3319.16. See, e.g., *Phillips v. Babcock & Wilcox* (1986), 349 Pa.Super. 351, 353–354, 503 A.2d 36.

{¶ 21} Coolidge purports to have identified two sources of public policy in the Act that combine to afford her protection in this case. The first is R.C. 4123.56's provision for TTD compensation, the purpose of which, Coolidge states, "is to provide persons who cannot work, due to occupational injury or disease, financial means until they sufficiently recover from their injuries so they can return to work."

{¶ 22} The second source cited by Coolidge is R.C. 4123.90, which provides:

{¶ 23} "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer."

{¶ 24} Coolidge readily concedes that she "was not terminated for filing a workers' compensation claim." She argues, however, that the policy of protection embodied in these enactments should cover an employee who is discharged for "being absent from work, when the reason for th[e] absence is a work-related injury." Otherwise, Coolidge predicts, "many people working under contracts [with absenteeism provisions], not just teachers, will lose their employment while receiving TTD benefits."

{¶ 25} This court has never decided whether discharges for absenteeism caused by allowed workers' compensation injuries are violative of public policy in the absence of retaliatory motive. A similar issue was raised in *Wilson v. Riverside Hosp.* (1985), 18 Ohio St.3d 8, 18 OBR 6, 479 N.E.2d 275, and the concurring and dissenting justices in that case opined that such discharges are not prohibited under R.C. 4123.90. Id. at 11, 18 OBR 6, 479 N.E.2d 275 (Wright, J., concurring); Id. at 11–12, 18 OBR 6, 479 N.E.2d 275 (Holmes, J., dissenting). However, the majority of the court found the issue premature and did "not determine or consider the validity of appellee's leave of absence policy for its employees as it relates to R.C. 4123.90." Id. at 10, 18 OBR 6, 479 N.E.2d 275, fn. 2.

{¶ 26} The issue has been litigated in a number of other jurisdictions. At least eight Ohio district courts of appeals have addressed the question in one form or another, some drawing support from the concurring and dissenting opinions in *Wilson*. The prevailing view is that an injured worker may be discharged or otherwise penalized for absenteeism or inability to work during a period of compensated disability. These courts find that R.C. 4123.90 and similar antiretaliation statutes are limited in scope to protecting employees from being discharged for having invoked or participated in workers' compensation proceedings and refuse to extend the protection beyond those specific parameters. They essentially perceive retaliatory discharge as a narrowly defined exception to employment at will, which is not applicable unless the employee proves a causal connection between the pursuit of workers' compensation benefits and the discharge. In so doing, these courts argue that the workers' compensation system is not designed to provide the injured worker with job security or guaranteed employment during periods of work-related disability and that basic discrimination law does not require the employer to treat a workers' compensation claimant more advantageously than other absent workers.

{¶ 27} Some courts are adamant that workers' compensation law should not unnecessarily intrude upon the employment relationship itself or disrupt the employer's business concerns with maintaining a steady and reliable work force. Others appear hesitant at the ease with which the employer could use the absenteeism-based discharge to circumvent the existing protections. In either case, however, these courts invariably conclude that public policy does not exempt the disabled workers' compensation claimant from the provisions of a neutral absenteeism policy or practice that is applied evenhandedly to all employees. See *Blair v. Milford Exempted Village School Dist. Bd. of Edn.* (12th Dist.1989), 62 Ohio App.3d 424, 575 N.E.2d 1190; *Barker v. Dayton Walther Corp.* (2d Dist.1989), 56 Ohio App.3d 1, 564 N.E.2d 738; *Vince v. Parma Community Gen. Hosp.* (Jan. 21, 1988), 8th Dist. No. 53180, 1988 WL 5165; *Brown v. Whirlpool Corp.* (Sept. 1, 1987), 3d Dist. No. 9–86–20, 1987 WL 16261; *Zazo v. Akron* (9th Dist.1987), 44 Ohio App.3d 1, 540 N.E.2d 733; *Laithwaite v. Pizza Hut Hallrich Co.* (Aug. 19, 1986), 7th Dist. No. 85 CA 98, 1986 WL 8924; *Copper v. Buckeye Steel Castings* (C.A.6, 1994), 16 F.3d 1218; *Finnerty v. Personnel Bd. of City of Chicago* (1999), 303 Ill.App.3d 1, 236 Ill.Dec. 473, 707 N.E.2d 600; *Hess v. Clarcor, Inc.* (1992), 237 Ill.App.3d 434, 177 Ill.Dec. 888, 603 N.E.2d 1262; *Wilmot v. Kaiser Aluminum & Chem. Corp.* (1991), 118 Wash.2d 46, 821 P.2d 18; *Chiaia v. Pepperidge Farm, Inc.* (1991), 24 Conn.App. 362, 588 A.2d 652; *Duncan v. New York State Dev. Ctr.* (1984), 63 N.Y.2d 128, 481 N.Y.S.2d 22, 470 N.E.2d 820; *Galante v. Sandoz, Inc.* (1983), 192 N.J.Super. 403, 470 A.2d 45, affirmed (1984), 196 N.J.Super. 568, 483 A.2d 829; Annotation, Recovery for Discharge from Employment in Retaliation for Filing Workers' Compensation Claim (Supp. 2002), 32 A.L.R.4th 1221, Section 6; 6 Larson's Workers' Compensation Law (2002) 104–62 to 104–63, Section 104.07[4], and Digest: Ch. 104, D104–194 to D104–196, fn. 44.

{¶ 28} On the other hand, a minority of courts hold that it is a violation of public policy for an employer to discharge or otherwise penalize a temporarily and totally disabled employee pursuant to a "neutral" absenteeism or attendance policy, when the absence or inability to work is directly related to a compensable injury. Contrary to the majority view, these courts perceive their holdings to be basic expressions of the policy that undergirds the workers' compensation structure. They essentially find that a rule prohibiting such discharges is necessary to protect the right of employees to freely pursue workers' compensation benefits without fear of reprisal and that, in any event, an employee has a right to be absent from work while temporarily incapacitated as a result of a compensable injury.

{¶ 29} Thus, in *Coleman v. Safeway Stores, Inc.* (1988), 242 Kan. 804, 752 P.2d 645, the Supreme Court of Kansas held that absences caused by an employee's work-related injuries could not be counted against her for purposes of the

employer's attendance policy. In so holding, the court first reviewed the policy considerations that prompted the recognition of an exception for at-will employees discharged in retaliation for filing workers' compensation claims:

{¶ 30} " 'The Workmen's Compensation Act provides efficient remedies and protection for employees, and is designed to promote the welfare of the people in this state. It is the exclusive remedy afforded the injured employee, regardless of the nature of the employer's negligence. To allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purpose of the act.' " Id., 242 Kan. at 809, 752 P.2d 645, quoting *Murphy v. Topeka–Shawnee Cty. Dept. of Labor Serv.* (1981), 6 Kan.App.2d 488, 495–496, 630 P.2d 186.

{¶ 31} After rejecting the argument that only at-will employees can bring tort actions for wrongful discharge in violation of public policy, the court went on to explain:

{¶ 32} "In this case, it was undisputed that Safeway could have terminated Coleman's employment under the applicable attendance policy if she had accrued six infractions. The district court correctly decided that any absences caused by her work-related injury should not be counted against Coleman. Allowing an employer to discharge an employee for being absent or failing to call in an anticipated absence as the result of a work-related injury would allow an employer to indirectly fire an employee for filing a workers' compensation claim, a practice contrary to the public policy of this state as decided in *Murphy v. City of Topeka.*" Id., 242 Kan. at 815–816, 752 P.2d 645.

{¶ 33} Similarly, in a case involving the application of a leave-of-absence policy to discharge a hospital aide who was suffering from a compensable disability, the Tenth District Court of Appeals held that under R.C. 4123.90, an employee cannot be fired for failing to submit a request for leave where the employer is on notice that her absence is due to a work-related injury. *Caldwell v. Columbus Developmental Ctr.* (10th Dist.1989), 47 Ohio App.3d 100, 547 N.E.2d 417. In so holding, the court stated:

{¶ 34} "At the outset, we note that if an employee is off work because of an industrial injury and is unable to return because of that injury, the employee does not need permission from the employer to be absent from work." Id. at 102, 547 N.E.2d 417.

{¶ 35} In *Oil, Chem. & Atomic Workers Internatl. Union, AFL–CIO, Local 7–629 v. RMI Co.* (11th Dist.1987), 41 Ohio App.3d 16, 534 N.E.2d 110, Wallace Heinonen Jr. was fired for failing to return from a leave of absence pursuant to the terms of a collective bargaining agreement between his union and his employer. At the time of his discharge, Heinonen was receiving TTD compensation from the Bureau of Workers' Compensation. A grievance was filed by the

union, but the arbitrator upheld the discharge on the basis that Heinonen failed to demonstrate that he had just cause not to report to work upon the expiration of his leave of absence, and the trial court affirmed the arbitrator's decision.

{¶ 36} In reversing the judgment of the trial court, the court of appeals found that the leave-of-absence provision in the labor agreement could not reasonably be interpreted as applying to employees who are absent because of compensable injuries. Id. at 19, 534 N.E.2d 110. But contrary to the referee's decision in the present cause, the court in *RMI Co.* did not limit its decision to the specific language of the contract. The court also found that "the arbitrator exceeded his authority * * * by ignoring * * * the public policy and purpose of the workers' compensation statutes, in particular R.C. 4123.56." Id. at 20–21, 534 N.E.2d 110. Thus, after emphasizing that TTD payments may be terminated under R.C. 4123.56 "only upon application and hearing by a district hearing officer," the court explained:

{¶ 37} "Public policy would require a reversal of a decision which would allow an employer to force a worker to choose between going back to work or being terminated without the employer's first complying with R.C. 4123.56, *when the dispute is over the employee's ability to return to work.*" (Emphasis sic.) Id., 41 Ohio App.3d at 20, 534 N.E.2d 110. See, also, *Local 1985, Internatl. Bhd. of Elec. Workers v. Hoover Co.* (C.A.6, 1996), 96 F.3d 1448.

{¶ 38} These concepts were more fully developed by the Supreme Court of Maine in *Lindsay v. Great N. Paper Co.* (Me.1987), 532 A.2d 151, 153:

{¶ 39} "Lindsay contends on appeal that Great Northern's 'no fault' absenteeism policy, although facially neutral, when applied to instances where the absenteeism is caused by work-related injury operates in a discriminatory manner to subvert the purposes of the Workers' Compensation Act. We agree with Lindsay that the absenteeism policy unlawfully discriminates against him because it labels his rightful absence because of a work-related injury as an unexcused absence.

{¶ 40} "The Workers' Compensation Act is premised on the recognition that accidents are inevitable incidents of modern industry and that the burden should not be borne by the employee. *Boyce's Case,* 146 Me. 335, 340, 81 A.2d 670, 672–73 (1951). The Act relieves the victims of industrial accidents of the adverse consequences of personal injury and resulting unemployment by shifting the burden from the individual and ultimately to society at large. *Scott's Case,* 117 Me. 436, 444, 104 A. 794, 797 (1918). The Act in effect superimposes on the underlying employment contract a vested right to receive compensation and a fixed obligation to pay it upon the happening of an industrial accident. *Berry v. M.F. Donovan & Sons,* 120 Me. 457, 459, 115 A. 250, 251 (1921); *Gauthier's Case,* 120 Me. 73, 76, 113 A. 28, 30 (1921). That an employee who is injured in the

course of his employment has a right not only to compensation but also to time off necessary to complete recovery is implicit in the Act. *Cf. Delano* [*v. City of S. Portland* (Me.1979)], 405 A.2d [222] at 227 (right of employee to refuse employment hazardous to his work-related injury is implicit in the Act).

{¶ 41} "The effect of Great Northern's 'no fault' absenteeism policy in this case was to penalize an employee, like Lindsay, who became subject to a fourteen-day suspension without pay because of work-related injury. * * * To avoid this result, Lindsay's only recourse would have been to work despite his injury, an alternative clearly at odds with the beneficent purposes of the Act."

{¶ 42} Having reviewed the foregoing and other authorities, we find the minority position to be entirely more tenable and consistent with the purposes of the Workers' Compensation Act. In the final analysis, the majority view reflects a rather anomalous proposition—that an employee cannot be fired for having pursued TTD compensation but can be fired for the very absenteeism and inability to work that defines the employee as eligible to receive such compensation.

{¶ 43} The basic purpose of any antiretaliation statute is to enable employees to freely exercise their rights without fear of retribution from their employers. The recognition of a public-policy exception for wrongful discharge in retaliation for filing a workers' compensation claim, whether derived from statutory or common law, is built on the premise that "[i]nability to challenge retaliatory discharges would undermine the purpose of the workers' compensation statute by forcing the employee to choose between applying for the benefits to which he is entitled and losing his job." 82 American Jurisprudence 2d (2003) 682–683, Wrongful Discharge, Section 93. The same coercion exists when an employer is permitted to fire an employee solely because of absenteeism or physical incapacity during a period of TTD, the only difference being that such a decision forces the employee to choose between the *enjoyment* of benefits to which he or she is entitled and the loss of employment.

{¶ 44} This is not to say that every absenteeism-based discharge of a temporarily and totally disabled workers' compensation claimant is tactically designed to frustrate the claimant's right to compensation. Nevertheless, we agree with the minority of courts that employees who are temporarily and totally disabled as a result of their work-related injuries have a right not only to the compensation provided in the act, but also to whatever period of absence from work is deemed medically necessary to complete their recovery or stabilize their injuries. This court has time and again reiterated that the basic purpose of TTD compensation is to compensate an injured employee for the loss of earnings that he or she incurs while the injury heals. See, e.g., *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 38; *State ex*

*rel. Baker v. Indus. Comm.* (2000), 89 Ohio St.3d 376, 380, 732 N.E.2d 355; *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 211, 631 N.E.2d 138; *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533. A temporarily and totally disabled employee is by definition physically unable to perform the duties of his or her former position of employment. See *State ex rel. Horne v. Great Lakes Constr. Co.* (1985), 18 Ohio St.3d 79, 18 OBR 117, 480 N.E.2d 753; *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586. Considering that the statute is designed to provide the injured worker with the necessary means to subsist during a period of TTD, it would be inconsistent to allow the employer to fire such a worker solely because of the disability for which the employee is being compensated.

{¶ 45} Moreover, the argument that employers should not be required to treat a workers' compensation claimant more advantageously than other absent workers may well suffice as a galvanizing slogan, but it has no value in the present inquiry. To complete the analogy to discrimination and equal protection law, workers' compensation claimants are not similarly situated to other employees precisely because they are workers' compensation claimants. By virtue of sustaining a work-connected injury, the workers' compensation claimant enters a system "in which employers and employees exchange their respective common-law rights and duties for a more certain and uniform set of statutory benefits and obligations." *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 119, 748 N.E.2d 1111. This system redefines the employment relationship with respect to injury-induced or disability-related discharges. Under this system, the workers' compensation claimant is entitled to whatever protection is accorded injured workers by the provisions and policies of the Workers' Compensation Act, regardless of whether comparable protections are provided to employees by other bodies of law. However "neutral" or "evenhanded" an employer's absenteeism policy may be, it cannot override the statutory protections.

{¶ 46} In our opinion, the policy of protection embodied in the Workers' Compensation Act can be effectuated only if an employer is not permitted to discharge an employee for being absent from work due to an allowed injury for which the employee is receiving TTD compensation. We hold, therefore, that an employee who is receiving TTD compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition.

{¶ 47} While not specifically raised as an issue for our review, there appears to be some concern on the part of the court of appeals that Coolidge did not fully cooperate with her employer. In particular, the court of appeals mentions that "Coolidge never applied for uncompensated leave as contemplated by the Board's

policies" and failed to respond to "phone calls * * * [made] by the superintendent in order to determine her plans for the 1999–2000 school year."

{¶ 48} This seems to suggest that appellee may have independent grounds for discharging Coolidge on the basis that she failed to submit requests for leave of absence or provide notice of her ongoing status or condition. But the court of appeals neglects to mention the undisputed fact that appellee was intimately involved in virtually every aspect of Coolidge's workers' compensation proceedings and has been continually aware of her condition and status, including the causal relationship between her work-connected injuries and continued absences. Under these circumstances, courts generally hold the employer accountable for what it knew or should have known about the employee's absence.

{¶ 49} "An employer may not limit in advance what it 'knows or has reason to know' about an employee's absence due to workplace injury to only one kind or source of information, blinding itself to other observable facts." *Bausman v. Interstate Brands Corp.* (C.A.10, 2001), 252 F.3d 1111, 1121. Thus, an employee's failure to complete the employer's required leave-of-absence forms cannot justify termination where the employer is "on notice of [the employee's] work-related injury and that her injury was the cause of her continued absence * * *, notwithstanding that she failed to fill out the appropriate documentation." *Caldwell,* supra, 47 Ohio App.3d at 103, 547 N.E.2d 417. Addressing a similar issue, the Supreme Court of Kansas explained, "Safeway's claim that Coleman was not discharged for absences, but for failing to call in to report absences, is not persuasive given the fact that Coleman was being treated by a company physician who provided reports to Safeway regarding Coleman's condition." *Coleman,* supra, 242 Kan. at 816, 752 P.2d 645.

{¶ 50} Thus, an employee who is receiving TTD compensation may not be discharged for failing to complete forms required for a leave of absence, or for failing to notify his or her employer as to the length of the absence, where the employer is otherwise on notice of the employee's condition and status. Moreover, it would be patently illogical to hold that a temporarily and totally disabled employee does not need the employer's permission to be absent from work, only then to turn around and allow the employee to be fired for failing to ask for such permission.

{¶ 51} Of course, we do not excuse or condone the actions of an absent employee who refuses to answer his or her employer's requests for relevant information regarding the employee's condition or work status. Nor do we suggest that a temporarily and totally disabled employee may ignore with impunity his or her employer's reasonable inquiries into the cause or length of an absence. But nor will we permit an employer to circumvent today's holding by

couching an absenteeism-based discharge in terms of noncooperation and simply discounting its own knowledge of the facts.

{¶ 52} In the present case, Coolidge's teaching contract was terminated solely on the basis that she remained absent from work and incapable of performing her teaching duties upon the expiration of her uncompensated leave of absence. Since Coolidge's absence and inability to work were due entirely to a work-related injury for which she was receiving ongoing TTD compensation, her discharge constitutes a violation of public policy and, therefore, is without "good and just cause" under R.C. 3319.16.

{¶ 53} Accordingly, the judgment of the court of appeals is reversed, and, for the reasons stated in this opinion, the judgment of the trial court ordering Coolidge's teaching contract restored to its previously effective status is reinstated.

Judgment reversed.

MOYER, C.J., F.E. SWEENEY, PFEIFER, HILDEBRANDT, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

LEE H. HILDEBRANDT JR., J., of the First Appellate District, sitting for COOK, J.

———————

Drake, Phillips, Kuenzli & Clark and William E. Clark; Bernard K. Bauer Co., L.P.A., and Bernard Bauer, for appellant.

Cooper & Gentile Co., L.P.A., Janet K. Cooper and Diane L. Gentile, for appellee.