DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Abebe Getachew ("relator"), commenced this original action in mandamus requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying temporary total disability ("TTD") compensation and to grant him the requested compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate recommended the requested writ of mandamus be denied. Relator filed objections to the magistrate's decision.
 {¶ 3} In his objections, relator first argues the magistrate inappropriately applied State ex rel. Louisiana-Pacific Corp. v.Indus. Comm. (1995), 72 Ohio St.3d 401 to relator's claim. Specifically, relator argues that he did not receive any formal notice of termination.
{¶ 4} However, "there is no automatic requirement of mutual consent or notice for a termination to be effectuated." Hurlbertv. Donlin (1987), Trumbull App. No. 3784. Louisiana-Pacific,
supra, does not require notice of termination unless other facts of the case require it, and relator points to no facts in this case which would require the employer to provide such notice. Accordingly, relator's first objection is overruled.
 {¶ 5} In his second objection, relator argues the magistrate failed to consider that R.C. 4123.56(A) places the burden on the employer to make a light-duty job offer to avoid paying TTD. The determination of whether relator can perform light-duty work is immaterial as there is some evidence to support the commission's finding relator voluntarily abandoned his employment. Accordingly, relator's second objection is overruled.
 {¶ 6} In his third objection, relator argues the magistrate failed to consider that when an employer is on notice an employee's absence is work related, an employee may not be discharged. Specifically, relator cites two cases, Caldwell v.Columbus Developmental Center (1989), 47 Ohio App.3d 100 andCoolidge v. Riverdale Local School Dist., 100 Ohio St.3d 141,2003-Ohio-5357. However, neither of these cases support the premise of his objection. Accordingly, relator's third objection is overruled.
 {¶ 7} Following an independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the facts and applied the salient law to them. Accordingly, we adopt the magistrate's findings of fact and conclusions of law as our own. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Bryant and Petree, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Abebe Getachew, : Relator, : v. : No. 03AP-351 Industrial Commission and : (REGULAR CALENDAR) Distribution Fulfillment Services, : Respondents.
 MAGISTRATE'S DECISION Rendered on October 22, 2003 Agee, Clymer, Mitchell Laret, and Gregory R. Mitchell,
for relator.
Jim Petro, Attorney General, and Lisa R. Miller, for respondent Industrial Commission of Ohio.
Porter, Wright, Morris Arthur, and Christopher Russell,
for respondent Distribution Fulfillment Services.
 IN MANDAMUS {¶ 8} Relator, Abebe Getachew, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for temporary total disability ("TTD") compensation and requesting that the commission be ordered to grant him the requested compensation.
Findings of Fact:
 {¶ 9} 1. Relator sustained a work-related injury on December 13, 2001, and his claim was originally allowed for: "sprain right shoulder/arm."
 {¶ 10} 2. On the date of injury, relator sought treatment at the Ohio State University ("OSU") Emergency Room. He was released from the hospital with the restriction that he not use his right arm to perform work.
 {¶ 11} 3. On December 19, 2001, relator was seen by Dr. Joseph E. Kearns at OSU Occupational Medicine. On that date, relator received physical therapy and was told to avoid lifting over ten pounds.
 {¶ 12} 4. Relator was seen at OSU Occupational Medicine on December 20, 2001 by Dr. Garner. Relator was instructed to do no work with the right upper extremity.
 {¶ 13} 5. Pursuant to his affidavit, relator reported for work on December 14, 2001, and was given a light-duty job in the Returns Department. However, relator had severe discomfort and his supervisor told him he should take the day off. Relator reported for work on December 17, 2001, with his doctor's excuse limiting him to light-duty work.
 {¶ 14} 6. Pursuant to a May 13, 2002 note in the record by Michael Barnhart, the third shift operations manager, relator did report to work on December 17, 2001, but indicated that he did not want to perform the job in the Returns Department. Relator took sick time for the day.
 {¶ 15} 7. Pursuant to his affidavit, relator had another therapy visit on December 18, 2001, and instead of returning to work he went home. The same day, relator was contacted by the employer and was informed that he would have to work in the Returns Department in order to be paid. Because of the pain he had experienced while working the Returns Department, relator did not report to the job because it exceeded his restrictions. Relator maintains, in his affidavit, that Dr. Garner eventually restricted him to an inability to use his right upper extremity arm.
 {¶ 16} 8. Relator failed to report to work or contact the employer on December 26, 2001, December 27, 2001, and December 28, 2001. Effective December 31, 2001, relator was terminated for his failure to call or report for work.
 {¶ 17} 9. Relator contacted the employer on January 10, 2002, and also changed physicians to Dr. Scott Cohen.
 {¶ 18} 10. On February 4, 2002, Dr. Cohen completed a C-84 form certifying TTD compensation from January 10, 2002 until February 25, 2002, due to the conditions of right wrist sprain/strain and elbow sprain/strain. Dr. Cohen completed another C-84 form certifying TTD compensation from January 10, 2002 to present, with an estimated return-to-work date of March 25, 2002.
 {¶ 19} 11. An MRI was performed on relator on February 14, 2002, which showed the following conditions:
1. Anterior labral tear.
2. Tendinosis of the infraspinatus tendon with a partial tear near the insertion.
3. High-grade articular-sided partial tear of the posterior fibers which is contiguous with a focal full-thickness tear of the middle and anterior fibers of the supraspinaus tendon at the insertion with a gap of approximately 1.5 cm.
4. Subacromial-subdeltoid bursal fluid.
 {¶ 20} 12. Relator again saw Dr. Kearns who, on July 3, 2002, completed a C-84 form certifying TTD compensation retroactive to his initial treatment dated December 13, 2001 through January 10, 2002.
 {¶ 21} 13. On March 4, 2002, relator filed a motion requesting that his claim be additionally allowed to include cervical sprain, sprain of right wrist, and sprain of right elbow. He also requested TTD compensation for the first time, for the period of January 10, 2002 to present.
 {¶ 22} 14. Relator's motion was heard before a district hearing officer ("DHO") on May 14, 2002, and resulted in an order amending relator's claim to include cervical sprain but disallowed the additional condition of right wrist sprain and found that the additional condition of sprain right elbow was moot. Furthermore, the DHO noted that the employer had accepted the additional conditions of labral tear, right shoulder; supraspinatus tear, right shoulder, subscapularis tear, right shoulder; infraspinatus tear right shoulder; and rotator cuff tear, right shoulder. Thereafter, the DHO denied the requested period of TTD compensation based upon State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401, after finding that the employer's records indicated that relator had failed to call in or show up for work for three consecutive days, in violation of the written work policy indicating that an employee can be terminated for an unreported absence of three consecutive scheduled work days. At the hearing, relator's counsel indicated that because relator was injured and under restrictions, the employer was required to make a written job offer of light-duty work to relator. Inasmuch as the employer failed to do that, counsel argued that there was no voluntary abandonment. The DHO noted, however, that relator was not requesting TTD compensation during the period of time in which relator argued that the employer did not have light-duty work within his restrictions available to him. Instead, the DHO noted that the request for TTD compensation was for a period of time following relator's termination. The DHO concluded as follows:
The District Hearing Officer notes that it is not the Industrial Commission role to determine the reasonableness of the employer's rule. The fact is the attendance rule exists and applies to all employees whether injured or not. The rule clearly defines the prohibited conduct and identified a no call no show as a dischargeable offense. As the injured worker has acknowledged receipt and review of the written work rule he is found to have known about it.
The injured worker has not presented any evidence as to why he stopped contacting the employer. He last had contact on 12/17/2001 when there was a dispute about light duty work; even though the Occupational Health records continue to release the injured worker with restrictions up to 01/03/2002. While the District Hearing Officer empathizes with the fact that the injured worker was not yet released to return to his former position of employment, the case law does not bar application ofLouisana-Pacific in those cases.
 {¶ 23} 15. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on June 21, 2002. The SHO affirmed the prior DHO order and noted that the only issue argued at the hearing was whether or not relator had voluntarily abandoned his position of employment under Louisiana-Pacific. The SHO specifically noted as follows:
The only issue argued was the District Hearing Officer's finding that the claimant had voluntarily abandoned the workplace under Louisiana-Pacific.
The Staff Hearing Officer agrees and finds that the claimant did meet the three-pronged test under that case.
The claimant received a written policy that "unreported absence of three consecutive scheduled workdays" could result in termination. The claimant signed for this on 09/19/2001.
The claimant does not deny that he was off for three consecutive days that he didn't call in.
He testified that he didn't think it applied to him since his absence was due to a worker's compensation injury. He also thought, according to his affidavit, that he wouldn't bother coming in because he knew the employer would ask him to do work that he couldn't do.
The Staff Hearing Officer finds, as did the District Hearing Officer, that it is not up to the Industrial Commission to determine the reasonableness of the employer's rule. It was a clearly stated rule of which the claimant was put on notice and knew the consequence of not following it.
Therefore[,] the Staff Hearing Officer finds that claimant did voluntarily abandon his former position of employment and is not entitled to a payment of temporary total disability from 01/10/2002 forward.
All evidence was reviewed and considered.
 {¶ 24} 16. Relator filed an appeal from the SHO order on July 8, 2002. The commission refused the appeal by order mailed July 17, 2002.
 {¶ 25} 17. Thereafter, on July 22, 2002, relator filed a request for reconsideration and included a new C-84 form from Dr. Kearns dated July 3, 2002, and certifying a period of TTD compensation from December 13, 2001 until January 9, 2002. Relator also attached two commission orders from two other claim files and argued that, pursuant to those orders, the commission should find that he did not voluntarily abandon his former position of employment and was entitled to compensation.
 {¶ 26} 18. The commission denied relator's request for reconsideration by order mailed August 14, 2002, for the reasons that the request failed to meet the criteria of commission resolution R98-1-3.
 {¶ 27} 19. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 28} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 29} It is undisputed that the determination of disputed facts is within the final jurisdiction of the commission. Stateex rel. Allerton v. Indus. Comm. (1982), 69 Ohio St.2d 396. Questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers of fact-finding. Teece, supra. Furthermore, it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's.State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373.
 {¶ 30} In the present case, the SHO noted that, at the hearing, relator did not deny that he was off work for three consecutive days and that he did not call in. The SHO noted that relator testified that he did not think the policy applied to him because his absence was due to a work-related injury and because he knew that the employer did not have work for him within his restrictions. However, the SHO noted that it was not up to the commission to determine the reasonableness of the employer's rule where the rule was clearly stated and relator was on notice and knew the consequences of not following the rule.
 {¶ 31} The SHO order denying the requested period of TTD compensation is based on some evidence. The employer had a written work rule which established that an unreported absence for three consecutive scheduled work days could result in termination. Relator acknowledged that he received a copy of the handbook wherein the rule was provided. Relator also acknowledged that he did not report to work or call in for three consecutive days.
 {¶ 32} Louisiana-Pacific provides that an employee voluntarily abandons their employment where the termination was generated by the employee's violation of a written work rule or policy that: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense; and (3) was known or should have been known to the employee.
 {¶ 33} The commission did not abuse its discretion in finding that, pursuant to Louisiana-Pacific, relator had abandoned his employment and was not eligible for TTD compensation.
 {¶ 34} Relator also contends that the commission abused its discretion by refusing to hear his appeal and request for reconsideration following the SHO hearing. R.C. 4123.511(E) specifically provides an appeal from an SHO order to the commission is discretionary. Furthermore, pursuant to commission resolution R98-1-03, requests for reconsideration shall be considered only in the following cases: (1) new and changed circumstances occurring subsequent to the date of the order from which reconsideration is sought; (2) evidence of fraud; (3) clear mistake of fact; (4) clear mistake of law of such character that remedial action would clearly follow; and (5) an error which renders the order defective. Relator contends that the C-84 he presented constituted new and changed circumstances and warranted reconsideration. New and changed circumstances warranting reconsideration are defined in R98-1-03(D)(1)(a) as follows:
New and changed circumstances occurring subsequent to the date of the order from which reconsideration is sought. For example, there exists newly discovered evidence which by due diligence could not have been discovered and filed by the appellant prior to the date of the order from which reconsider-ation is sought. Newly discovered evidence shall be relevant to the issue in controversy but shall not be merely corroborative of evidence that was submitted prior to the date of the order from which reconsideration is sought.
 {¶ 35} Relator's request for reconsideration did not meet any of the above-cited reasons for granting reconsideration.
 {¶ 36} Because the SHO order denying the requested period of TTD compensation based upon relator's termination from his job is supported by some evidence and the order is otherwise in accordance with law, this magistrate finds that relator has not demonstrated that the commission abused its discretion. Furthermore, relator has not demonstrated that the commission abused its discretion in failing to grant him either an appeal from the prior SHO order or his request for reconsideration. As such, relator's request for a writ of mandamus should be denied.
 /S/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE