Moyer, C J.,
dissenting.
I
{¶ 28} The syllabus of our unanimous decision in Coolidge v. Riverdale Local School Dist., 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, states that “[a]n employee who is receiving temporary total disability compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition.” The majority states that our holding in that case was actually very narrow and is applicable only “to considerations of ‘good and just cause’ for termination under R.C. 3319.16.” Because both the text and underlying logic of Coolidge, as well as the nature of the tort of wrongful discharge in violation of public policy, belie such a limitation, I respectfully dissent.
{¶ 29} Additionally, since its decision renders the remaining issues in this case moot, the majority analyzes only the first of three submitted issues. Because I arrive at a contrary conclusion, I address all three issues herein.
II
{¶ 30} The first issue before us is whether Coolidge creates a public-policy tort claim for wrongful discharge. An examination of Coolidge reveals that we enunciated a clear public policy there that transcends the differences between at-will and contract employment.
{¶ 31} Cheryl Coolidge was receiving temporary total disability benefits under an allowed workers’ compensation claim when she was terminated for failing to attend work. Coolidge, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, at 117-11. She subsequently sued, and her claim proceeded to this court for a determination of “whether public policy embodied in the Workers’ Compensation Act protects an employee who is receiving [temporary total disability] compensa *359 tion from being discharged solely because of the disabling effects of the allowed injury, that is, absenteeism and inability to work.” Id. at ¶ 18.
{¶ 32} We noted from the outset that claims of wrongful discharge in violation of public policy, “whether based on workers’ compensation or other law, originated, and [were] generally conceived in Ohio and elsewhere, as an exception to the employment-at-will doctrine.” Coolidge, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, at ¶ 19. Even though Coolidge was not an at-will employee — she was a teacher working under a collective-bargaining agreement and was protected by R.C. 3319.16 from termination without “good and just cause” — we stated that this fact “does not mean that [her employer] can legally terminate Coolidge’s teaching contract for reasons that are repugnant to public policy.” Id. at ¶ 20.
{¶ 33} After addressing those preliminary concerns, we analyzed the prevailing majority and minority views on the issue and adopted the minority view that public policy prohibits terminating employees on temporary total disability leave. Id. at ¶ 26-42. We found support for this policy in R.C. 4123.56, the Workers’ Compensation Act provision on temporary total disability compensation, noting that it was directed at providing financial assistance to injured employees so that they may have time to recover from their injuries and return to work. Id. at ¶ 21, 44. Likewise, we determined that the antiretaliation statute in the act, R.C. 4123.90, protects employees who apply for workers’ compensation benefits to which they are entitled from losing their jobs. Id. at ¶43. Applying that concept to Coolidge’s situation, we determined that, without a public-policy provision in place to protect employees from termination while on temporary total disability, employees would be forced “to choose between the enjoyment of benefits to which [they are] entitled and the loss of employment.” (Emphasis omitted.) Id.
{¶ 34} Given those determinations, we held that “the policy of protection embodied in the Workers’ Compensation Act can be effectuated only if an employer is not permitted to discharge an employee for being absent from work due to an allowed injury for which the employee is receiving [temporary total disability] compensation.” Coolidge, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, at ¶ 46. We followed this statement with the syllabus language noted above. Only after this public policy was recognized and approved did we apply it to the particular facts of Coolidge’s case, noting that “her discharge constitutes a violation of public policy and, therefore, is without ‘good and just cause’ under R.C. 3319.16 [the statute governing termination of a teacher’s contract].” Id. at ¶ 52.
{¶ 35} Neither the explicitly framed issue nor the syllabus language limits this public policy to contract employment situations. We clearly held that the underlying purposes of the Workers’ Compensation Act would be defeated if an *360 employer could terminate an employee for missing work as a direct result of a temporary total disability recognized through a workers’ compensation claim. This policy is important regardless of whether one is an at-will employee, a party to an employment contract, or protected by a statute that permits termination only for “good and just cause.”
{¶ 36} The majority opinion ignores this clear policy in favor of factual distinctions. It cites the fact that Coolidge was a contract employee while appellee Shelley Bickers was not and notes that we did not address the elements of a claim for wrongful discharge in violation of public policy in that case. I acknowledge these differences, but find them to be immaterial.
{¶ 37} As the majority states, the first element of the four-part test for wrongful discharge in violation of public policy is that a “‘clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law.’ ” Painter v. Graley (1994), 70 Ohio St.3d 377, 384, 639 N.E.2d 51, fn. 8, quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398. Our rule is not that a clear public policy must first be expressed in an at-will employment case before it can be used to support wrongful-discharge claims; so long as one of the listed sources reveals it, the policy is sufficient. See id.
{¶ 38} While the public policy in Coolidge manifested itself in a case about good-and-just-cause termination, it was still manifested in the statutory and common law. Moreover, our opinion plainly invoked the idea of public-policy exceptions to at-will employment and noted that the same idea should protect someone like Coolidge who was not an at-will employee. See Coolidge, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, at ¶ 19-20. Unless we explicitly overrule Coolidge, there is no reason to deprive Bickers of the benefit of this clear public policy just because she was an at-will employee.
{¶ 39} While the majority is clearly uncomfortable with the result in Coolidge, stare decisis demands that we continue to apply the common law until it is overruled. See Rocky River v. State Emp. Relations Bd. (1989), 43 Ohio St.3d 1, 4-5, 539 N.E.2d 103. Limiting the policy to one type of employment is inappropriate; it either exists or it does not exist. Therefore, I would affirm the judgment of the court of appeals on this issue.
Ill
{¶ 40} The second issue in this case is whether Wiles v. Medina Auto Parts, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, precludes a public-policy claim premised on Coolidge because the statute adequately protects the public interest *361 at issue. For the following reasons, I would hold that Wiles does not prevent Bickers from pursuing her cause of action.
{¶ 41} Wiles examined the second element of the tort of wrongful discharge in violation of public policy, whether “ ‘ “dismissing employees under circumstances like those involved in the plaintiffs dismissal would jeopardize the public policy.” ’ ” Id. at ¶ 8, quoting Painter, 70 Ohio St.3d at 384, 639 N.E.2d 51, fn. 8, quoting Perritt, supra, at 399. Wiles sought to bring a claim of wrongful discharge in violation of public policy premised on the federal Family and Medical Leave Act, Section 2601 et seq., Title 29, U.S.Code, arguing that the remedies in that statutory scheme did not provide “ ‘make whole tort relief,’ ” which jeopardized the clear public policy in favor of family medical leave. Wiles, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, at ¶ 19.
{¶ 42} We disagreed, holding that a public policy is not jeopardized just because the statutory scheme does not afford a plaintiff the full panoply of damages available in a tort action. Id. at ¶ 20-22. Instead, public policy is jeopardized only when there are no alternative means of enforcing the public policy or, if a particular statute applies, the remedies therein are inadequate. Id. at ¶ 15-20. Under this rule, we rejected Wiles’s claim, as the remedies in the FMLA sufficiently addressed his claimed injury. Id. at ¶ 22.
{¶ 43} In this case, appellant, Western & Southern Life Insurance Company, invokes this rule, arguing that R.C. 4123.90 provides adequate statutory remedies to address the public policy identified in Coolidge, and thus Bickers’s claim fails the jeopardy element. I disagree.
{¶ 44} R.C. 4123.90 provides, “No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers’ compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.” (Emphasis added.) By its plain language, the statute protects an employee against whom the employer has retaliated because the employee filed a claim for compensation or otherwise pursued a claim for an injury that occurred in the course and scope of employment. As a remedy, it gives injured employees the ability to seek reinstatement with back pay, lost wages, and attorney fees. Id.
{¶ 45} However, R.C. 4123.90 does not provide a remedy to employees whose employment has been terminated for absenteeism that is directly related to the employee’s temporary total disability. Dismissing employees under such circumstances would jeopardize the clear public policy against that action, as it would allow an employer to force an employee “to choose between the enjoyment of [workers’ compensation] benefits to which he or she is entitled and the loss of employment.” (Emphasis omitted.) Coolidge, 100 Ohio St.3d 141, 2003-Ohio- *362 5357, 797 N.E.2d 61, at ¶ 43. Because R.C. 4123.90 provides no remedy for this circumstance, the jeopardy element is met. I would therefore affirm the holding of the court of appeals on this issue.
Kearns Co., L.P.A., and Michael A. Kearns; William D. Snyder & Associates and Gregory J. Claycomb; and Gittes & Schulte and Frederick M. Gittes, for appellee.
Frost Brown Todd L.L.C., George E. Yund, Joanne W. Glass, and Kasey Bond, for appellant. Frantz Ward L.L.P., Michael J. Frantz, Keith A. Ashmus, and Kelly S. Lawrence, urging reversal for amicus curiae Ohio Management Lawyers Association.
Thompson & Bishop and Christy B. Bishop; and Gittes & Schulte and Frederick M. Gittes, urging affirmance for amicus curiae Ohio Employment Lawyers Association.
IV
{¶ 46} The final issue presented for our review is whether Bickers’s claim must meet the notice and filing prerequisites set forth in R.C. 4123.90. Under the above reasoning, Bickers’s remedy lies with an action for wrongful discharge in violation of public policy, not with R.C. 4123.90. She was therefore not required to comply with its strict procedural limitations. Because actions for wrongful discharge in violation of public policy are not specifically covered by any statutory section, they are subject to the general, four-year limitations period set forth in R.C. 2305.09(D). See Pytlinski v. Brocar Prod., Inc. (2002), 94 Ohio St.3d 77, 80, 760 N.E.2d 385. I would therefore affirm the holding of the court of appeals on this issue.
V
{¶ 47} Given the clear public policy manifested in Coolidge and the lack of an adequate statutory remedy for Bickers’s discharge, I would affirm the judgment of the court of appeals and allow Bickers to proceed in the trial court on her action for wrongful discharge in violation of public policy.
Pfeifer, J., concurs in the foregoing opinion.