DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION.
{¶ 1} Relator, Shane P. Griffin, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying compensation for temporary total disability ("TTD"), and to issue a new order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R.12(M) of the Tenth District Court of Appeals, this matter was referred to magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate found that the claimant's discharge for leaving work, and thereafter his failure to call his employer on a sick day, did not establish a voluntary relinquishment of employment because there was no written rule of any kind notifying employees that discharge might result from such conduct. Therefore, the magistrate has recommended that we issue a writ of mandamus directing the commission to vacate its December 2002 order which found a voluntary abandonment of employment and to consider claimant's request for TTD compensation on the merits.
 {¶ 3} The commission filed objections to the magistrate's decision arguing that the magistrate incorrectly determined that the claimant was fired. Rather, the commission asserts that the claimant quit and therefore, the magistrate incorrectly applied the standard set forth in State ex rel. Louisiana-Pacific Corp.v. Indus. Comm. (1995), 72 Ohio St.3d 401. The commission also argues that the magistrate should have considered and rejected relator's assertion that the commission had continuing jurisdiction under R.C. 4123.52 after the patellar fracture was diagnosed.
 {¶ 4} Following an independent review pursuant to Civ.R. 53, we find that the commission's objection to the magistrate's finding that relator was fired is well-taken. Nothing in the record indicates that the employer told relator he was fired. Relator simply walked off the job and never returned. Therefore, we modify the magistrate's conclusions of law to the extent that it applies a legal standard premised upon a termination — rather than a voluntary relinquishment of employment.
 {¶ 5} We also agree with the commission that the magistrate should have addressed whether the claimant voluntarily abandoned his former position for reasons unrelated to the allowed conditions in the claim. Therefore, we also modify the magistrate's decision to address this argument.
 {¶ 6} It is undisputed that on March 20, 2003, the Bureau of Worker's Compensation allowed the claim for "right knee patellar fracture" because it was medically substantiated as being causally related to the industrial injury in May 2002. Nevertheless, it appears that the commission believed it could not consider this condition in assessing whether the claimant voluntarily abandoned his former position for reasons unrelated to the claim. We disagree. We believe it was an abuse of discretion for the commission not to assess whether the condition associated with this claim (the patellar fracture), was the reason the claimant voluntarily abandoned his former position. The fact that this condition was not diagnosed until after the claimant voluntarily abandoned his employment does not prevent the commission from considering it under its continuing jurisdiction. Therefore, we grant a limited writ of mandamus directing the commission to vacate its December 2002 order, and remand the matter to the commission to determine whether the claimant voluntarily abandoned his former position because of a condition that was subsequently determined to be causally related to the industrial injury.
Objections sustained in part; limited writ of mandamusgranted.
Brown and McCormac, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Shane P. Griffin, : Relator, : v. : No. 03AP-937 Ken Greco Company, Inc. and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents.
 MAGISTRATE'S DECISION Rendered on March 30, 2004 Harshman, Bernard Ramage, and Kimberlee J. Kmetz, for relator.
Turner, May Shepherd, and David A. Shepherd, for respondent Ken Greco Company, Inc.
Jim Petro, Attorney General, and Stephen D. Plymale, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 7} In this original action in mandamus, relator, Shane P. Griffin, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for temporary total disability ("TTD"), and to issue a new order granting the requested compensation.
Findings of Fact:
 {¶ 8} 1. On May 3, 2002, Shane P. Griffin ("claimant") was employed as a laborer at a scrap metal company, Ken Greco Company, Inc., when he sustained an industrial injury in the work yard. He was told at Beeghly Emergency Services that he had strained the right quadriceps, and he was given pain medication and a knee brace.
 {¶ 9} 2. On May 6, 2002, claimant visited Andrew Beistel, D.O., at WorkMED, complaining of throbbing pain in the thigh area that was worse with movement. Dr. Beistel opined that the incident at work on May 3, 2002, had caused the injury and current symptoms. The doctor's notes refer to work restrictions, but they are not recited.
 {¶ 10} 3.Claimant states that, after the initial injury on May 3, 2002, he exacerbated the condition on May 15 when he stepped into a hole in the work yard.
 {¶ 11} 4. On May 16, 2002, claimant visited Forum Health, an emergency services provider, and he did not report to work on time. One of the employer's managers received a cell-phone message from claimant, who said he had attempted to call the office but the fax machine was plugged in and he could not get through, and that he was at a doctor's office in regard to his work injury. Claimant later reported to work with a work-restrictions sheet from Forum Health.
 {¶ 12} 5. The work-restrictions form given to claimant by Forum Health includes no patient name, no diagnosis, and no date of injury. No examination findings are noted, and the injured part of the body is not identified. However, under the "limitations" heading, three items are marked, "Bending/kneeling/twisting/squatting," "Pushing/pulling," and "Prolonged walking." The name of the reporting caregiver is not identified on the form.
 {¶ 13} 6. According to a manager's notes, claimant was using crutches and asked for light duty work. The employer called Forum Health, and a woman named Nancy said that claimant could work with restrictions. The manager told claimant that he should perform his normal job, doing the burning work for 20-minute intervals, and that someone would set up material for him. The manager told claimant that the company would not be responsible for the medical bills because claimant had not reported the incident promptly. According to these notes, claimant apparently disputed his ability to do the assigned tasks and asked Jared Greco what would happen if he went home, whether it was grounds for dismissal. Mr. Greco responded that he did not know. Claimant left the office, stayed in the work yard for 15-20 minutes, and then left, according to the notes.
 {¶ 14} 7. According to the company manager, claimant did not report for work on May 17, 2002, and did not call regarding his absence.
 {¶ 15} 8. On May 20, 2002, claimant returned to Dr. Beistel, who reviewed the history, noting that X-rays were taken on May 3, 2002, and taken again after the exacerbation occurred. Claimant reported that, although the employer indicated that some duties could be omitted on May 16, the job required substantial pushing and pulling of a type that required much pivoting and twisting of the legs, which he could not do. He stated that, when he told his employer that he could not do it, the employer terminated his employment as of May 17, 2002. At the time of the examination, claimant could not straighten out his leg or put full weight on it. Dr. Beistel reviewed the treatment plan and noted work restrictions. He opined that if the treatment did not yield improvement, claimant may need an MRI and orthopedic consultation.
 {¶ 16} 9. On May 31, 2002, Dr. Beistel found "significant palpable tenderness over the suprapatellar region" and some swelling with mildly antalgic gait. He stated that, if claimant had not improved by mid-June, further testing may be needed.
 {¶ 17} 10. On June 19, 2002, claimant complained of significant pain and weakness. After ten minutes of standing or walking, the knee felt as though it would give out, and he was using a cane regularly. Dr. Beistel conferred with the physical therapist, who thought something more than a quadriceps strain was going on. Dr. Beistel considered the possibility of a tear. He recommended an MRI and orthopedic consultation.
 {¶ 18} 11. At some point, the claim was allowed for a "sprain of the knee and leg nec, right quadriceps dist."
 {¶ 19} 12. On July 3, 2002, the employer wrote to Ohio Comp Choice as follows:
It has come to our attention that a former employee, Shane Griffin, has been receiving continuing care for an injury. Your company has authorized an MRI for this former employee * * *. However, it is our position that Mr. Griffin was injured on May 3, 2002 and quit working for Ken Greco Company on May 16, 2002. During that time, he was under a physician's care and no MRI or orthopedic consultant was required. Therefore, if the apparent injury was that severe, an MRI or consultation would have been done at that time.
Mr. Griffin has not been an employee for almost two months, since he quit on May 16. When he quit he was released by his physician to perform his regular duties with Ken Greco Company with restrictions. We were prepared to allow him to perform his work while adhering to those restrictions, but he chose to walk off the job.
 {¶ 20} 13. On July 10, 2002, an MRI showed that claimant had sustained a fracture of the kneecap and also showed bone edema and intra-substance contusion.
 {¶ 21} 14. On July 22, 2002, claimant's 90-day examination was performed on behalf of the Ohio Bureau of Workers' Compensation by Waleed N. Mansour, M.D., who opined that claimant's symptoms were caused by the industrial injury and that he could not return to his former position as a laborer due to his injury-related restrictions. Dr. Mansour agreed that further treatment should be approved and opined that claimant had not reached maximum medical improvement.
 {¶ 22} 15. In August 2002, claimant consulted Thomas A. Joseph, M.D., who found that the fracture had healed but that claimant had developed quadriceps inhibition and related anterior knee pain, for which he recommended a course of treatment.
 {¶ 23} 16. Other medical reports were filed as well and have been reviewed.
 {¶ 24} 17. On September 3, 2002, a foreman for the employer set forth the following recollections regarding events on May 16, 2002:
* * * Shane Griffin came into the trailer with his doctor[']s excuse. He did not call to let myself, know that he was in the doctor[']s office. Jared Greco and I were in the trailer at the time. The doctor[']s note said he could work if he (Shane) could sit and stand in 20 minute intervals. Jared then called the doctor just to make sure. The doctor said it was alright, just as long as no pulling was involved.
Jared then told Shane to get dressed. Shane walked out of the office. About 5 minutes later, Shane walked into the office dressed to burn, with crutches, and asked Jared if there was any other light duty work he could do. Jared said no. Shane then asked if he could test metals, a job that he would have to be trained in and had never done before. Jared said no. Shane then got mad and started yelling at Jared about the condition of the yard. Jared pulled out Shane's file and showed him a piece of paper Shane had signed. Shane got mad and walked away. About 5 minutes later, I saw Shane getting in his car and leaving.
 {¶ 25} 18. On September 4, 2002, a district hearing officer ("DHO") ruled as follows regarding TTD compensation:
It is the order of the District Hearing Officer that temporary total compensation is granted from 5/16/02 through 6/30/02 inclusive and to continue upon submission of medical proof.
The District Hearing Officer relies on Dr. Beistel's 6/11/02 C-84 report and the 7/13/02 BWC IME of Dr. Mansour.
The District Hearing Officer specifically finds that the employer of record has failed to substantiate its assertion that the Injured Worker voluntarily abandoned his former position of employment on 5/16/02 for reasons unrelated to the allowed conditions in this claim. The District Hearing Officer notes that on 5/16/02 the employer of record terminated the Injured Worker's employment for the reason that the Injured Worker refused to continue working in a modified duty capacity. However, the Injured Worker testified that the injury herein precluded him from performing all of the duties required of him in this position.
The Injured Worker's contention was later supported by Dr. Mansour who did an IME on behalf of the BWC on 7/13/02. Dr. Mansour opined that the Injured Worker could only do sedentary type work and could not do modified duty work. As such, the District Hearing Officer finds that the Injured Worker's termination of employment on 5/16/02 was not unrelated to the allowed conditions in this claim.
 {¶ 26} 19. Based on the MRI and the reports of Drs. Joseph and Beistel, claimant had filed a request to have the fracture included in the claim. Accordingly, on December 5, 2002, an independent medical examination was performed by Alvars Vitols, D.O., who reviewed the history, noting that claimant had visited an emergency room on May 3, 2002, complaining of sharp knee pain. Dr. Vitols further noted that the MRI in July 2002 showed a fracture of the patella with bone bruise and subcutaneous edema. Signal changes were present in both the ACL and PCL ligament, consistent with intersubstance contusion without frank rupture. Joint effusion was also observed.
 {¶ 27} Dr. Vitols noted that claimant had requested an additional allowance for a fracture of the patella, which was pending. He also noted that claimant still could not tolerate resistive exercises although he had completed another series of physical therapy sessions. Strength was rated at three out of five, and claimant continued to limp. Dr. Vitols opined that the continuing symptoms of the knee were a result of the industrial injury on May 3, 2002. However, he concluded that no further physical therapy or medical treatment was warranted, as it had not had a curative effect. He stated that the claim should be allowed for the fractured patella, bone bruise, and injury to the ACL and PCL ligaments.
 {¶ 28} 20. On December 9, 2002, a staff hearing officer ("SHO") ruled as follows:
* * * [I]t is the finding of the Staff Hearing Officer that temporary total compensation from 5/16/02 through 6/30/02 inclusive is specifically denied for the reason that the claimant's attending physician through WorkMED released claimant for a light-duty job on 5/16/02 and that the employer herein had made available said job after within the claimant's physical restrictions per said WorkMED's restrictions. The Staff Hearing Officer further finds and orders that the claimant herein, refused said job offer by walking off said light-duty job as well as not reporting to work the next day.
In summary, the Staff Hearing Officer finds and orders that the claimant did not quit his employment due to the allowed conditions for which this claim is recognized and is thus no longer eligible for temporary total benefits herein.
This order is based on restrictions outlined by WorkMED, employer's memo log on file, Ken Greco's letter dated 7/3/02, as well as all testimony presented at hearing.
 {¶ 29} 21. Further appeal was refused.
 {¶ 30} 22. In March 2003, a medical file review was performed by C.H. McGowen, M.D., with respect to the issue of whether the claim should be allowed for the patellar fracture of the right knee. Dr. McGowen concluded that the patellar fracture was medically substantiated as being causally related to the industrial injury in May 2002.
 {¶ 31} 23. On March 20, 2003, the Bureau of Workers' Compensation allowed the claim for "right knee patellar fracture."
 {¶ 32} 24. In April 2003, a DHO upheld the allowance for the patellar fracture but denied TTD based on the prior determination that claimant voluntarily abandoned his employment.
 {¶ 33} 25. In July 2003, an SHO affirmed, and further appeal was refused.
Conclusions of Law:
 {¶ 34} In this action, claimant presents two arguments: (1) that the commission abused its discretion when it concluded in December 2002 that claimant voluntarily abandoned his employment in May 2002; and (2) that the commission abused its discretion in failing to recognize that the allowance of the patellar fracture was a sufficient change in circumstances to permit the commission to revisit, pursuant to R.C. 4123.52, its determination that claimant had voluntarily abandoned his employment in May 2002.
 {¶ 35} It is well established that, when a loss of wages is caused by a worker's voluntary departure from his employment, he is not entitled to TTD compensation, although he can reestablish eligibility by returning to wage-earning employment. E.g., Stateex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376; Stateex rel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25,2002-Ohio-5305.
 {¶ 36} When an employee is discharged by the employer, that departure may be treated as a voluntary relinquishment of employment by the worker where the employer meets specific elements of proof. In State ex rel. Louisiana-Pacific Corp. v.Indus. Comm. (1995), 72 Ohio St.3d 401, the court ruled that the employer's termination of a worker's employment constitutes a voluntary relinquishment of employment where the worker violated a written rule or policy and where the employer's rule/policy (1) clearly defined the prohibited conduct, (2) identified the violation as a dischargeable offense, and (3) was known to the worker or should have been known to him. Further, the commission must consider whether the rule violation was causally related to the allowed condition. State ex rel. Pretty Products, Inc. v.Indus. Comm. (1996), 77 Ohio St.3d 5.
 {¶ 37} The commission must determine whether the required or prohibited conduct — and the specific consequences — were clearly delineated in writing, because the commission cannot otherwise infer from the worker's conduct that he accepted the likely consequence of being fired. E.g., State ex rel. McKnabb v.Indus. Comm. (2001), 92 Ohio St.3d 559. Both the work rule and the penalty for its violation must be clear and must be in writing. Id.; State ex rel. Smith v. Superior's Brand Meats,Inc. (1996), 76 Ohio St.3d 408.
 {¶ 38} Here, the commission did not identify any writing that notified claimant of the consequences that would result if he chose to go home after arriving at work from the doctor's office. Indeed, the employer's evidence indicates that a manager told claimant that he did not know what the consequences would be. Even without that admission, the magistrate concludes that record contains insufficient evidence as a matter of law that claimant's decision to go home was a voluntary abandonment of his employment under Louisiana-Pacific. The record simply does not include evidence to support a finding of the elements that must be found in order for the commission to rule that an injured worker voluntarily relinquished his job.
 {¶ 39} Similarly, with respect to claimant's alleged failure to call in on May 17, 2002, the record includes no written rule of any kind that notifies employees that discharge may result following a single occurrence of failing to call the employer on a sick day. Therefore, claimant's discharge for such conduct cannot be deemed a voluntary relinquishment of employment by the injured worker. McKnabb. Because the record does not include evidence to support the elements that must be established underLouisiana-Pacific, the commission's decision that claimant voluntarily relinquished his job was an abuse of discretion, and that decision must be vacated.
 {¶ 40} Next, the magistrate turns to the commission's determination that the claimant's newly allowed condition did not constitute new and changed circumstances sufficient to modify its ruling as to abandonment of employment. However, based on the conclusion stated above, that the commission abused its discretion in finding an abandonment of employment, the second issue is moot.
 {¶ 41} The magistrate recommends that the court issue a writ of mandamus directing the commission to vacate its December 2002 order finding a voluntary abandonment of employment and to consider claimant's requests for TTD compensation on their merits.
 P.A. Davidson Magistrate 
P.A. Davidson Magistrate MAGISTRATE