DECISION
{¶ 1} Relator, Jeffrey Luther, commenced this original action requesting that this court issue a writ of mandamus that orders respondent Industrial Commission of Ohio ("commission") to vacate its order which denied him temporary total disability ("TTD") compensation after May 19, 2003, based upon a finding that relator had voluntarily terminated his employment with respondent Ford Motor Company Batavia Transmission Plant ("employer") and orders the commission to find that he is entitled to continuing TTD compensation pursuant to the holding of Coolidge v.Riverdale Local School Dist., 100 Ohio St.3d 141,2003-Ohio-5357.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. Therein, the magistrate recommended that this court issue a limited writ of mandamus ordering the commission to vacate its order denying TTD compensation after May 19, 2003, and ordering the commission to redetermine relator's termination of employment from the employer and specifically applying the holding and rationale inCoolidge.
 {¶ 3} Relator, employer, and the commission have all filed objections to the magistrate's decision. The matter is now before this court for a full, independent review.
 {¶ 4} The commission has filed two objections to the magistrate's decision. First, the commission argues that the magistrate erred by not finding that the commission had acted contrary to law or that it had abused its discretion. The commission asserts that without such a finding, it remains unclear whether the magistrate applied the correct standard of review. Second, the commission argues that the magistrate erred in finding that the commission should apply the holding and rationale in Coolidge. The commission agrees with the magistrate's analysis of Coolidge; however, it contends that the magistrate incorrectly concluded that Coolidge applies to the case at bar.
 {¶ 5} In its objections to the magistrate's decision, the employer argues that the decision of the commission was supported by some evidence. The employer states that the commission provided an explanation for the finding that relator's termination constituted a voluntary abandonment of employment, and that the explanation was supported by some evidence in the record. Additionally, the employer contends that Coolidge is not applicable to this case. In this regard, the employer states that "there is not one shred of evidence in the record to support" the allegation that relator's discharge was pre-textual. (Employer's objections, at 2.)
 {¶ 6} By his objections to the magistrate's decision, relator argues that the magistrate erred in not ordering the commission to find that relator is entitled to TTD compensation subsequent to May 19, 2003.
 {¶ 7} In her decision, the magistrate determined that a limited writ is necessary for the commission to redetermine relator's entitlement to TTD compensation, specifically assessing the application of Coolidge to this case. In essence, the magistrate found that the commission abused its discretion to the extent that it failed to address the issue raised in Coolidge.
See State ex rel. Griffin v. Ken Greco Co., Inc., Franklin App. No. 03AP-937, 2004-Ohio-5262, at ¶ 6 (finding that commission abused its discretion in not assessing whether the condition associated with the claim was the reason the claimant voluntarily abandoned his former position).
 {¶ 8} Both the commission and the employer disagree with the magistrate's analysis regarding the application of Coolidge to this case. In Coolidge, the Supreme Court of Ohio held as follows: "An employee who is receiving TTD compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition." Id. at ¶ 46. Furthermore, the court stated that it will not "permit an employer to circumvent today's holding by couching an absenteeism-based discharge in terms of noncooperation and simply discounting its own knowledge of the facts." Id. at ¶ 151-152.
 {¶ 9} In Coolidge, the ultimate issue was whether the employee's termination was contrary to Ohio employment law. Obviously, if an employment discharge is contrary to law, then the voluntary abandonment doctrine cannot be applied so as to preclude TTD compensation. See State ex rel. Walters v. Indus.Comm., Franklin App. No. 01AP-1043, 2002-Ohio-3236, at ¶ 34 (finding that "a discharge motivated by the claimant's filing of a workers' compensation claim is not a voluntary abandonment of employment"). In a case, such as the one at bar, where an injured worker is discharged for allegedly violating an absenteeism-related work policy, the issues relating to whether the discharge was unlawful and whether there was voluntary abandonment, intersect.
 {¶ 10} In the case at bar, it is clear that the employer had some knowledge of relator's alleged condition. Despite this knowledge, the employer fired relator on the basis that he did not comply with a written work rule regarding a failure to report. Therefore, the employer discharged relator for violating an absenteeism-related written work rule, even though it had some knowledge of his alleged condition.
 {¶ 11} Under the facts of this case, we resolve, as did the magistrate, that the dispositive issue that was not resolved by the commission should be determined by the commission in the first instance.[1] That is, the commission must determine whether the principles discussed in Coolidge apply to relator and, in view of that analysis, whether his discharge should not bar the receipt of further TTD compensation.
 {¶ 12} Contrary to the parties' objections to the magistrate's decision, we find that the magistrate has properly discerned the pertinent facts and applied the relevant law to those facts. Thus, we overrule the objections of relator, employer, and the commission, and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we hereby issue a limited writ of mandamus ordering the commission to vacate its order denying TTD compensation after May 19, 2003, and ordering the commission to redetermine relator's termination of employment from the employer and specifically applying the holding and rationale in Coolidge.
 Objections overruled; limited writ granted.
Bryant and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Jeffrey Luther, : Relator, : v. : No. 04AP-1127 Ford Motor Company Batavia : (REGULAR CALENDAR) Transmission Plant and : The Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on April 29, 2005 Clements, Mahin Cohen, L.P.A., Co., and William E.Clements.
 Taft, Stettinius Hollister LLP, and Cynthia C. Felson,
for respondent Ford Motor Company.
Jim Petro, Attorney General, and Lasheyl N. Sowell, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 13} Relator, Jeffrey Luther, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied him temporary total disability ("TTD") compensation after May 19, 2003, based upon a finding that relator had voluntarily terminated his employment with respondent Ford Motor Company Batavia Transmission Plant ("employer") and ordering the commission to find that he is entitled to continuing TTD compensation pursuant to the holding of Coolidge v. Riverdale Local School Dist.,100 Ohio St.3d 141, 2003-Ohio-5357.
Findings of Fact:
 {¶ 14} 1. Relator sustained a work-related injury on January 25, 1991, and his claim has been allowed for: "herniated disc L4-5; lumbosacral strain."
 {¶ 15} 2. The employer, a self-insured employer under Ohio's workers' compensation laws, began paying TTD compensation to relator.
 {¶ 16} 3. On February 12, 1996, relator underwent an L4-5 discectomy. Relator underwent a second discectomy and L4-5 fusion on November 27, 1998.
 {¶ 17} 4. Following this second surgery, relator returned to light-duty work at the employer's Batavia, Ohio, facility.
 {¶ 18} 5. Relator continued to perform light-duty work with the employer until June 28, 2000, when his job was terminated when the plant changed ownership and light-duty work was no longer available.
 {¶ 19} 6. By order dated April 2, 2001, a staff hearing officer ("SHO") awarded relator TTD compensation from May 31 through June 7, 2000, and from June 28, 2000 to the present date based upon the medical reports of relator's treating physician, Stephen D. Heis, M.D. The commission ordered that further TTD compensation be paid upon submission of supporting medical evidence.
 {¶ 20} 7. Thereafter, by order dated November 20, 2001, TTD compensation was awarded from April 4 through December 9, 2001, and the order indicated that: "Further Temporary Total Compensation is ordered paid upon submission of supporting medical evidence." The order was based upon the medical reports of Dr. Heis and relator's testimony at hearing.
 {¶ 21} 8. For the next nine months, relator failed to submit any medical evidence to support continued payment of TTD compensation.
 {¶ 22} 9. On October 29, 2002, relator's union representative filed a self-insured complaint against the employer alleging that the employer was required to issue payment of TTD compensation pursuant to the November 20, 2001 SHO order. On December 19, 2002, the self-insured claims services department of the Ohio Bureau of Workers' Compensation found that relator's self-insured complaint was invalid because the nine month gap wherein relator failed to notify the employer of ongoing disability.
 {¶ 23} 10. Relator, through his union representative, filed a C-86 motion seeking the payment of ongoing TTD compensation. This motion was administratively filed November 22, 2002, supported by office notes and the C-84s of Dr. Heis.
 {¶ 24} 11. In the interim, the employer attempted to have relator examined by a doctor of the employer's choice; however, relator failed to attend three medical examinations. As a result, by order mailed February 6, 2003, relator's claim was suspended.
 {¶ 25} 12. Relator's motion regarding payment of TTD compensation was heard before a district hearing officer ("DHO") on February 17, 2004. The DHO awarded TTD compensation from December 9, 2001 through December 15, 2003, pursuant to the office notes and disability forms completed by Dr. Heis.
 {¶ 26} 13. Upon appeal by the employer, the matter was heard before an SHO on April 20, 2004. On that same day, prior to the hearing, counsel for the employer had faxed to counsel for relator a document showing that relator had been terminated from employment with the employer on May 19, 2003, for failing to comply with a portion of the UAW-Ford Labor Agreement, which provides:
Section 5. Loss of Seniority
* * *
[Four] (Failure to Report)
If the employee does not, within five (5) working days (excluding Saturdays, Sundays and Holidays) after notice to report has been sent to him/her, either report for work or give a satisfactory reason for his/her absence, unless it is not possible for him/her to comply with either of these requirements; and provided at least ten (10) working days have elapsed since his/her last day at worked.
On May 9, 2003, the employer sent a certified letter to relator notifying him that his conditional sick leave had expired on December 15, 2002, and notifying him that he had five working days to either return to work or submit medical information regarding his physical condition. Relator signed for receipt of the May 9, 2003 certified letter on May 10, 2003; however, relator did not respond.
 {¶ 27} 14. The matter was heard before an SHO on April 20, 2004. The SHO vacated the prior DHO order and awarded relator TTD compensation from December 9, 2001 through May 19, 2003. The SHO terminated TTD compensation after May 19, 2003, citing the above-quoted section of the UAW-Ford Labor Agreement. The hearing officer found that relator's termination barred the payment of TTD compensation in accordance with the Supreme Court of Ohio's decision in State ex rel. Louisiana-Pacific Corp. v. Indus.Comm. (1995), 72 Ohio St.3d 401.
 {¶ 28} 15. Relator's appeal was refused by order of the commission mailed May 18, 2004.
 {¶ 29} 16. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 30} For the reasons that follow, the magistrate recommends that this court issue a limited writ of mandamus, as more fully explained herein.
 {¶ 31} It is well-established that a discharge from employment may be characterized as voluntary in some circumstances. State ex rel. Watts v. Schottenstein StoresCorp. (1993), 68 Ohio St.3d 118. In Louisiana-Pacific, the claimant was terminated from employment for violating a company policy prohibiting three consecutive unexcused absences. The Supreme Court of Ohio held that the claimant's discharge constituted a voluntary abandonment of employment because the policy: (1) clearly defined the prohibited conduct in writing; (2) identified the violation as a dischargeable offense; and (3) was known or should have been known by the employee.
 {¶ 32} As such, pursuant to Louisiana-Pacific, where a claimant has voluntarily relinquished employment, either by resigning or otherwise abandoning employment, the claimant is deemed to have accepted the consequence of being without wages for a period of time and is not eligible to receive TTD compensation. See, for example, State ex rel. McKnabb v. Indus.Comm. (2001), 92 Ohio St.3d 559. However, in State ex rel.Pretty Products, Inc. v. Indus. Comm. (1996), 77 Ohio St.3d 5, the Supreme Court of Ohio distinguished Louisiana-Pacific,
determining that where the employee's conduct is causally related to the industrial injury, the termination of employment is not voluntary. In Pretty Products, the claimant was initially injured in February 1990 and the claim was allowed for sprain/strain lumbosacral. On November 8, 1990, the claimant left work and went to the hospital due to back pain. In a series of medical excuse slips, Dr. Magness certified that the claimant was unable to return to her former job. The last dated medical slip certified that claimant could return to work on March 1, 1991. However, the claimant did not return to work nor did she then produce a slip extending her disability. The claimant also did not report to work the following Monday or Tuesday and, consequently, she was terminated pursuant to a provision of the union/management agreement.
 {¶ 33} The claimant, in Pretty Products, moved the commission for TTD compensation beginning November 8, 1990, and the commission determined that she had not voluntarily abandoned her former position of employment due to her failure to timely submit an excuse slip from her doctor.
 {¶ 34} In Pretty Products, the employer filed a mandamus action in this court but this court denied the writ. On appeal to the Supreme Court of Ohio, this court's judgment was reversed and a writ of mandamus issued. The Supreme Court found that the commission's order granting TTD compensation was too vague to be reviewed and thus remanded the matter to the commission.
 {¶ 35} In Pretty Products, at 6-7, the court stated as follows:
The receipt of temporary total disability ("TTD") compensation rests on a claimant's inability to return to his or her former job as a direct result of an industrial injury. State ex rel.Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630, * * * syllabus. However, eligibility may be compromised when the claimant is no longer employed at that job. Once a claimant is separated from the former position of employment, future TTD compensation eligibility hinges on the timing and character of the claimant's departure.
The timing of a claimant's separation from employment can, in some cases, eliminate the need to investigate the character of departure. For this to occur, it must be shown that the claimant was already disabled when the separation occurred. "[A] claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal." State exrel. Brown v. Indus. Comm. (1993), 68 Ohio St.3d 45, 48 * * *.
The Pretty Products court also distinguishedLouisiana-Pacific, stating:
* * * [T]here is an important distinction betweenLouisiana-Pacific and this case. In the former, there was no evidence that the claimant's absences were due to industrial injury, while in this case there is. Whether this distinction is ultimately outcome-determinative, however, cannot be decided absent clarification of the commission's reasoning.
Id. at 7-8.
 {¶ 36} Thereafter, the Supreme Court of Ohio decided theCoolidge, supra, case and held as follows at the syllabus:
An employee who is receiving temporary total disability compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition.
 {¶ 37} Relator argues that his termination was not voluntary because the conduct giving rise to his discharge resulted from the allowed conditions in the claim. Pretty Products. Relator also argues that his termination for failing to report was a pretext and violated Coolidge. However, the employer argues that neither Pretty Products nor Coolidge is applicable to the instant case.
 {¶ 38} First, the employer argues that there is no evidence in the present case that relator's absenteeism resulted from the allowed conditions in his claim as he was not receiving TTD compensation at the time of his termination and he had failed to submit medical documentation to his employer for nine months. Furthermore, the employer notes that relator's refusal to attend three medical examinations scheduled by the employer should be held against him.
 {¶ 39} On the other hand, relator contends that there is no evidence in the record that the commission considered his argument that the employer's termination was a pretext and that the employer is attempting to use Coolidge in a way not envisioned by the court when it wrote the decision. Coolidge
had been written to address the public policy concerns inherent in terminating an employee who is receiving ongoing disability compensation. Relator contends that, in the present case, the employer was aware of his injury, was aware that he continued treatment with Dr. Heis, and was even seeking to ascertain the extent of relator's disability when the employer terminated him. Relator believes that the public policy arguments in Coolidge
should apply to him and that relator's discharge should not bar the receipt of further TTD compensation in this case.
 {¶ 40} The magistrate notes that in Coolidge, at ¶ 51, the court had noted further as follows:
Of course, we do not excuse or condone the actions of an absent employee who refuses to answer his or her employer's requests for relevant information regarding the employee's condition or work status. Nor do we suggest that a temporarily and totally disabled employee may ignore with impunity his or her employer's reasonable inquiries into the cause or length of an absence. But nor will we permit an employer to circumvent today's holding by couching an absenteeism-based discharge in terms of noncooperation and simply discounting its own knowledge of the facts.
 {¶ 41} This is not a situation where the employer had no knowledge whatsoever of the claimant's alleged condition. While relator had, at one point, been released to light-duty work, he had never returned to full-duty work. However, as stated inCoolidge, courts do not want to condone relator's failure to submit to the scheduled examinations. However, the magistrate finds that since this issue was not addressed by the commission it would be improper for this court, at this time, to make a determination regarding the status of the evidence relative to this issue. Clearly, relator failed to respond to the employer's May 9, 2003 letter and had failed to cooperate when he refused to submit to three medical examinations scheduled by the employer. The magistrate finds that the commission could conceivably determine this issue in favor of either party and therefore, this issue should be determined by the commission in the first instance. As such, it is the magistrate's decision that a limited writ of mandamus be issued ordering the Industrial Commission of Ohio to vacate its order denying TTD compensation after May 19, 2003, and ordering the commission to redetermine relator's entitlement to TTD compensation after that date after determining the effects of relator's termination of employment from the employer and specifically applying the holding and rationale inCoolidge.
[1] We note that this issue was not waived by the relator, as it was raised before the commission.